UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MALCOLM APARICIO,

      Plaintiff,

v.                                                         Case No. 8:12-cv-753-T-24 TGW
                                                          8:04-cr-538-T-24 TGW

UNITED STATES OF AMERICA,

      Defendant.
_____/

## ORDER

This cause comes before the Court on Petitioner Malcolm Aparicio's motion to vacate, set aside, or correct an allegedly illegal sentence pursuant to 28 U.S.C. § 2255. (Civ. Doc. No 1; Cr. Doc. No. 110). The Government filed a response in opposition to the motion. (Civ. Doc. No. 11). Petitioner filed a traverse. (Civ. Doc. No. 12). The Court has carefully considered the motion and memorandum, the response, and the traverse, as well as the transcripts of the plea and sentencing hearings, and the other appropriate filed documents, and for the reasons stated herein, determined the motion should be **DENIED**.

**I.    Background**

On November 4, 2004, a grand jury returned a two count indictment against Malcolm Aparicio charging him in Count One with conspiracy to distribute and possess with intent to distribute 1,000 kilograms of marihuana and in Count Two with possessing with intent to distribute 50 kilograms or more of marihuana (Cr. Doc. No. 1). On June 2, 2006, Aparicio pled guilty, pursuant to a plea agreement, to Count One, a lesser included offense of conspiracy to distribute and possess with intent to distribute 100 kilograms or more of marihuana. The Court

accepted the plea, finding the plea was entered freely, voluntarily and knowingly, deferred adjudication of guilt, and allowed Aparicio to remain at liberty until sentencing. The sentencing was scheduled for September 1, 2006. On September 1, 2006, Aparicio failed to appear for sentencing, and the Court issued a bench warrant for his arrest. Aparicio was arrested over three years later, on December 10, 2009. On February 18, 2010, the Court conducted a sentencing hearing and sentenced Aparicio to 236 months in the Bureau of Prisons.

Aparicio appealed and the Eleventh Circuit dismissed his appeal on February 23, 2011 based on a "valid and enforceable sentence appeal waiver in Appellant's plea agreement." Aparicio filed a motion for rehearing, which the Eleventh Circuit denied, specifically rejecting his contentions that "the agreement should not be enforced because he allegedly misunderstood its provisions as to drug quantity" and "that the Government breached the agreement." A writ of certiorari was denied by the U.S. Supreme Court on October 3, 2011. Aparicio filed this timely 28 U.S.C. § 2255 motion on April 9, 2012.

**II.     Claims**

Aparicio makes three claims in his motion. In ground one, he argues that his counsel was ineffective, resulting in a plea and plea agreement that are unenforceable and a sentence that was illegally imposed in violation of due process. In ground two, Aparicio argues that his counsel was ineffective for giving him misleading advice about his guideline range and inducing him to plead guilty, making his plea unintelligent, unknowing and involuntary. In ground three, Aparicio argues his counsel was ineffective for failing to argue at sentencing that the Government breached the stipulated terms of the plea agreement.

**III.    Background**

    **A.      Initial Plea Hearing**

Aparicio was before the Court on June 2, 2006 to enter a plea of guilty to the charged offense of conspiracy to distribute and possess with the intent to distribute a controlled substance. (Cr. Doc. No. 78). After Aparicio was sworn in, the Court confirmed that Aparicio intended to plead guilty. (Cr. Doc. No. 78, p. 6). Counsel for Aparicio responded that Aparicio "definitely want[ed] to plead guilty." (Cr. Doc. No. 78, p. 6). Counsel also stated that Aparicio was going to "question the factual amount of the 700 pounds" contained in the factual basis of the signed plea agreement. (Cr. Doc. No. 78, p. 6). The Court indicated that the only alternative to pleading pursuant to the plea agreement would be for Aparicio to plead open to the Indictment, which contained two counts, as opposed to the one count contained in the plea agreement. (Cr. Doc. No. 78, p. 7). When the Court inquired about why the problem with the drug amount was surfacing so late in the process, defense counsel stated that Aparicio had agreed to the amount in the plea agreement but now did not think it was accurate. Furthermore, counsel stated that Aparicio "ha[d] always wanted to plead guilty, did not want to go to trial, and he just wanted to get this over with and go on and maybe hastily signed the plea agreement." (Cr. Doc. No. 78, p. 8).

The counsel for the Government, who was standing in for the assigned prosecutor on the case, stated that the Government "might not be willing to go through with the plea agreement if [Aparicio] didn't, in fact, admit to that amount" of 700 pounds. (Cr. Doc. No. 78, p. 9). The Court announced that it was putting the case back on the trial calendar. Aparicio then requested an opportunity to address the Court:

>THE DEFENDANT: May I speak, Your Honor?
>
>THE COURT: Yes.
>
>THE DEFENDANT: Your Honor, I don't want to waste the resource -- this Court's resources for this Court. I don't want to -- I

3

> don't want to take this to trial, I just want to get to the -- the – the truth, you know what I mean, get this to where -- what it's supposed to be, uh, not more.
>
> THE COURT: Why did you agree to it?
>
> THE DEFENDANT: I'll be honest with you, I questioned when I first got it, I questioned everything on it, and, you know what I mean, uh, basically it was just either do this or do that or go to trial. I don't -- I don't want to go to trial.
>
> THE COURT: Well, you don't have a lot of options. You -- you can either plead open, plead pursuant to a plea agreement, or -- or go to trial, those are your three options.
>
> THE DEFENDANT: I understand that.

Aparicio then informed the Court of the financial burden that the continued proceedings was having on his family. (Cr. Doc. No. 78, pp. 12–13). The Court placed the case back on the trial calendar and told the parties that if Aparicio wanted to plead at a future time to let the Court know. (Cr. Doc. No. 78, pp. 13–14).

### B.    Continued Plea Hearing

Approximately twenty minutes later, at Aparicio's request, the Court reconvened the plea hearing. (Cr. Doc. No. 79). The Court began by confirming that Aparicio wanted to proceed:

> THE COURT: All right, this is a continuation of the re-arrangement in 04-538. It was communicated to me by Ms. Santiago, the courtroom deputy, Mr. Aparicio that you wished to proceed with the plea; is that accurate?
>
> THE DEFENDANT: I will, your honor.
>
> THE COURT: Okay. Well, you should know that one of the things I will ask you, after I ask Ms. Moody to read into the -- into the record the factual basis, if you accept that factual basis. And I'm not going to take the plea if you don't.
>
> THE DEFENDANT: I understand that, Your Honor.

4

>THE COURT: And the money judgment is also another issue that will be a part of the plea agreement.
>
>THE DEFENDANT: I understand that as well, Your Honor.
>
>THE COURT: And you wish to proceed?
>
>THE DEFENDANT: Yes.
>
>THE COURT: Okay.
>
>THE DEFENDANT: Yes.

The Court explained to Aparicio that he had to be sure that pleading guilty was how he wished to proceed, and that once Aparicio entered the plea and the plea was accepted, he could not withdraw the plea. (Cr. Doc. No. 79, p. 4). Furthermore, the Court explained the rights that Aparicio would be waiving if he pled guilty, and Aparicio confirmed he still wanted to go through with the plea.

The Court went through the terms of the plea agreement and made note of the fact that Aparicio was pleading to the lesser included offense of conspiracy to distribute and possess with the intent to distribute 100 kilograms or more of marihuana rather than 1,000 kilograms or more. (Cr. Doc. No. 79, p. 11). Aparicio told the Court that he had no questions or confusion about the maximum penalties of the charge, nor of the elements of the offense. (Cr. Doc. No. 79, pp. 12–13). When discussing the applicable sentencing guidelines, the Court mentioned "that assuming that there's nothing that happens between today's date and the date of sentencing, that the Government will not object to [the Defendant] getting a low-end guideline sentence . . . [a]nd they will also not object to a sentence at the low end of the advisory guidelines." (Cr. Doc. No. 79, p. 14). The Court went over the money judgment in the amount of $560,000, and Aparicio stated that he understood the amount of the money judgment. (Cr. Doc. No. 79, p. 18).

When the Court asked whether his entering the plea was a voluntary decision, Aparicio responded: "Yeah, it is. I'm guilty, I have to plead guilty." (Cr. Doc. No. 79, p. 22). Aparicio also confirmed that there had been no promises, offers, or threats made to coerce him into pleading guilty. (Cr. Doc. No. 79, p. 23).

The factual basis contained in the plea agreement was put on the record, detailing the conspiracy and the role that Aparicio played in the commission of the crime. (Cr. Doc. No. 79, pp. 27–32). Included in the factual basis was the fact that "[t]he total approximate weight involved in the conspiracy was at least 700 kilograms but less than 1,000 kilograms of marijuana." (Cr. Doc. No. 79, p. 27). The factual basis of the plea agreement also contained many details that Aparicio had no personal knowledge of, as they pertained to the other members of the conspiracy. (Cr. Doc. No. 79, p. 32). The Court acknowledged this limitation and asked Aparicio if he had any objections to the specifics of the factual basis; he stated that he did not. (Cr. Doc. No. 79, p. 32). The Court confirmed with Aparicio that he still wished to proceed with the plea before finding a factual basis for and accepting the plea. (Cr. Doc. No. 79, p. 33).

Following the plea hearing, the Court agreed to defer adjudication of guilt until Aparicio's sentencing, thus allowing Aparicio to remain at liberty to assist his mother and adult sister in moving from Pennsylvania to Arizona. (Cr. Doc. No. 79, pp. 34–39). The sentencing hearing was scheduled for September 1, 2006. When Aparicio failed to appear at the sentencing, the Court ordered that a warrant be issued for his arrest.

**C.     Sentencing Hearing**

On December 10, 2009, Aparicio was apprehended in Arizona and returned to the Middle District of Florida for sentencing. Aparicio appeared before the Court for sentencing on February 18, 2010. The Court began the proceeding by reminding Aparicio that the Court had

6

accepted his plea, adjudicated him guilty, and set the matter for sentencing and he had failed to appear. (Cr. Doc. No. 85, pp. 4). The Court then acknowledged that Aparicio had two unresolved objections to the guideline calculations in the presentence investigation report: one to the two level increase for obstruction of justice, due to Aparicio's failure to appear, and the other to the lack of a two level decrease based on Defendant's acceptance of responsibility. (Cr. Doc. No. 85, p. 5). Counsel for Aparicio argued that Aparicio's history, familial obligations, and showing of remorse should be taken into account in ruling on the objections. (Cr. Doc. No. 85, pp. 6–9).

Following the Government's response to the objections, the Court gave Aparicio an opportunity to speak. Aparicio began by stating that he accepted responsibility for the offense, before arguing that he "never agreed to the amounts" of drugs contained in the factual basis of the plea agreement. (Cr. Doc. No. 85, p. 11). According to Aparicio, the erroneous amount included in the plea agreement would make his base offense level higher than what it would have been had the drug amount been accurate. (Cr. Doc. No. 85, p. 16). In response to his objection, the Court referred to Aparicio's plea:

> THE COURT: Well, let me just point out to you that you entered into a plea agreement. And it had a factual basis, which you did not dispute. And the factual basis in the plea agreement says, among other things, the approximate amount of gross proceeds made by defendant Malcolm Aparicio from the sale of marijuana to McCann and Grant was at least $560,000. That's computed by 700 pounds times $800 a pound.
>
> THE DEFENDANT: Correct -- correct, Your Honor. But like I said, I -- I know that I signed and I said, like I said, I accept responsibility for what I've done. I'm just -- all I was trying to say is that the numbers -- I'm sorry. I was really extremely nervous that day. I mean, it was -- it was -- like I said, I -- I knew that I was guilty. I pled guilty. Basically -- evidently I didn't pay very much attention.

7

> THE COURT: Well, my point is this: My point is you agreed to something when you entered into this plea agreement. You signed the plea agreement. And didn't I take the plea? Did I take the plea?
>
> THE DEFENDANT: I think you did.
>
> \*   \*   \*
>
> THE DEFENDANT: So but I -- like I said, I do accept my responsibility. I just didn't -- I just don't -- I don't agree with the number that were put together is all. But I do accept my responsibility. I didn't want to go do trial or -- or take this to court because I knew I was guilty. Therefore, you know, I'd never fight anything because I knew where -- I'm -- if I'm guilty, I'm guilty. I'll take my responsibility.

The Court overruled Aparicio's objections to the facts and the guidelines. Counsel for Aparicio further asked the Court to consider the 18 U.S.C. section 3553 factors in its sentencing of Aparicio, including his health problems, family issues, and lack of a serious felony record. (Cr. Doc. No. 85, pp. 26–30).

The Court proceeded with sentencing, stating that it had accepted the plea and adjudicated Aparicio guilty, on the mistaken presumption that adjudication had occurred during the plea hearing. (Cr. Doc. No. 85, p. 33). Aparicio was sentenced to 236 months in prison. (Cr. Doc. No. 85, p. 33).

**IV.   Discussion**

    **A.   Ineffective Assistance of Counsel**

In <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984), the Supreme Court created a two-part test for determining whether a defendant received ineffective assistance of counsel. First, a defendant must demonstrate that his counsel's performance was deficient, which requires a "showing that counsel made errors so serious that counsel was not functioning as the counsel guaranteed . . . by the Sixth Amendment." <u>Id.</u>   Second, a defendant must demonstrate that the

defective performance prejudiced the defense, meaning counsel's errors were so serious as to deprive the defendant of a fair trial, a trial the result of which is reliable. Id. The defendant must establish both prongs, and if he makes an insufficient showing as to one, the Court need not address the other prong in order to find that counsel was not ineffective. Id. at 697.

In order to succeed on an ineffective assistance of counsel claim, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 688. Judicial scrutiny of counsel's performance muse be "highly deferential," as it is "all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence." Id. at 689. A court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690. The court must determine whether, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Id. The movant carries a heavy burden, as reviewing courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. The defendant must overcome the "presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. at 689 (internal quotation marks omitted).

Simply showing that counsel erred or his performance was deficient is not sufficient. Id. at 691. Instead, the defects in counsel's performance must be prejudicial to the defense. Id. at 692. Therefore, under the second prong, a movant must establish that there is a reasonable probability that the results would have been different but for counsel's deficient performance. Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

9

### B. Prior Resolution

"'[O]nce a matter has been decided adversely to a defendant on direct appeal, it cannot be relitigated in a collateral attack under section 2255." United States v. Nyhuis 211 F.3d 1340, 1343 (11th Cir. 2000) (quoting United States v. Natelli, 553 F.2d 5, 7 (2d Cir. 1977)); see also Olmstead v. United States, 55 F.3d 316, 319 (7th Cir. 1995)(section 2255 motion is "neither a recapitulation of nor a substitute for direct appeal; absent changed circumstances of fact or law, a court will not reconsider an issue decided on direct appeal.)

### C.    The Plea Agreement and Counsel at the Change of Plea

Aparicio first argues that his counsel was ineffective, resulting in a plea and a plea agreement that are unenforceable and a sentence illegally imposed in violation of due process. Secondly, Aparicio claims his counsel was ineffective for giving him misleading advice about the guideline range and inducing him to plead guilty, making his plea unintelligent, unknowing and involuntary. According to Aparicio, counsel gave faulty advice that Aparicio relied on in entering into his plea agreement and pleading guilty. This fact allegedly led to Aparicio's faulty agreement to terms that he had no knowledge of or intent to agree with (the drug amounts).

The issue of drug amounts was raised by Aparicio on direct appeal and in his motion for reconsideration which the Eleventh Circuit denied, stating "we reject his contention that the agreement should not be enforced because he allegedly misunderstood its provisions as to drug quantity." As such, it cannot be relitigated in a collateral attack under section 2255.

In addition, Aparicio's claims are meritless. Even if the Court assumes counsel's advice was ineffective, Aparicio could not have been prejudiced. During the plea hearing, Aparicio was asked numerous times whether he understood and voluntarily agreed to the terms of the plea agreement that he had signed, to which he consistently responded in the affirmative. When

10

Aparicio was asked if he objected to any of the facts within the factual basis of the plea agreement, Aparicio declared that he did not. As such, Aparicio's plea could not have been involuntary, unknowing, and unintelligent. "There is a strong presumption that the statements made during the colloquy are true." United States v. Gonzalez-Mercado, 808 F.2d 796, 800 n.8 (11th Cir. 1987). This includes a defendant's statement that he understands the consequences of his guilty plea. See United States v. Medlock, 12 F.3d 185, 187 (11th Cir. 1994).

In order to establish that his counsel was ineffective, Aparicio must show that counsel performed at the plea hearing below an objective standard of reasonableness that probably resulted in an adverse outcome. Strickland, 466 U.S. at 688-94. The decision to plead guilty pursuant to the plea agreement was based on Aparicio's competent and voluntary decision to be bound by the terms of the plea agreement, not on the basis of his counsel's actions. Aparicio further argues that were it not for counsel's advice, he would have insisted on proceeding to trial, which is enough to show that counsel's performance may have resulted in an adverse outcome. Hill v. Lockhart, 474 U.S. 52, 59 (1985). However, during the plea hearing, Aparicio indicated numerous times that he absolutely did not want to go to trial

Accordingly, the Court concludes that Aparicio's claim that his plea agreement is unenforceable and his plea was involuntary, unknowing, and unintelligent lacks merit, as does his claim that he was denied effective assistance of counsel at the change of plea hearing.

### D. Counsel at Sentencing and the Government's Breach of the Plea Agreement

Aparicio claims that his counsel at sentencing failed to object to the factual basis of the offense, and that such failure constituted ineffective assistance. Specifically, Aparicio alleges that counsel should have argued against the quantity of drugs contained in the plea agreement and in the pre-sentence report because it led to a harsher sentence. Additionally, Aparicio argues

11

that the plea agreement contained the Government's recommendation for the low end of the sentencing guidelines, and the Government breached that agreement.

This claim was also raised by Aparicio in his direct appeal. In its denial of Aparicio's motion for reconsideration, the Eleventh Circuit stated "we reject Appellant's contention that the Government breached the agreement: the Government's promise to recommend a low end sentence was conditioned on the absence of information suggesting such a recommendation would be unwarranted, and Appellant's failure to appear at his originally-scheduled sentencing hearing constituted adverse information." Because it was raised on direct appeal, Aparicio cannot relitigate this claim in his 2255 motion.

In addition, Aparicio's claim should be denied on the merits. Aparicio would have to show that his counsel's performance at the sentencing proceeding fell below an objective standard of reasonableness that most likely resulted in a prejudicial outcome. Strickland, 466 U.S. 668. The sentence imposed by the Court was predicated on the fact that Aparicio had possessed with intent to distribute 700 pounds of marihuana. This quantity was cited in the plea agreement and discussed at the plea hearing; Aparicio agreed to plead guilty and did not contest this fact. Even though Aparicio now argues that the quantity is wrong and that counsel should have argued as such during sentencing, the Court still must presume that the facts agreed to during the plea hearing are true. Gonzalez-Mercado, 808 F.2d at 800 n.8. As such, Aparicio could not have been negatively affected by counsel's failure to question the amount of drugs at the sentencing. Finally, the Court's decision not to sentence at the low end of the guidelines with the Government's agreement was based on Aparicio's failure to appear at his originally scheduled sentencing. (Cr. Doc. No. 85, p. 37).

### E. The Enforceability of the Sentence without Formal Adjudication

Throughout the memorandum in support of the 2255 motion, Aparicio argues that the sentence imposed by the Court was not enforceable and /or illegal because there was no formal adjudication of guilt. At Aparicio's plea hearing on June 2, 2006, the Court accepted the plea but adjudication was deferred until the time of sentencing so that Aparicio could remain on bond and attend to his mother's affairs. When he appeared before the Court again on February 18, 2010, over three years later, Aparicio was sentenced without the Court formally adjudicating him guilty. Aparicio claims that the Government's ability to punish is predicated on the existence of an adjudication of guilt, and that any punishment enacted without proper adjudication is done so without due process of law.

The Government argues that the conviction is valid even without an adjudication, and as such, no adjudication is necessary for sentencing. The Government relies on United States v. Faison, 61 F.3d 22 (11th Cir. 1995). The court in Faison held "that a jury verdict of guilty constitutes a conviction . . . whether or not the court enters a formal judgment adjudicating the defendant guilty." Id. at 23. Aparicio argues that the Faison decision does not apply to his case, because Faison's guilt was determined by a jury, while Aparicio pled guilty without a jury trial.

Aparicio's argument is unpersuasive. The Supreme Court has held that a plea of guilty, like a verdict, is conclusive, more is not required, and the court has nothing to do but to give judgment and sentence. Dickerson v. New Banner Institute, 460 U.S. 103, 112–14 (1983). Contrary to Aparicio's argument, the fact that there was no formal adjudication does not let him escape the enforcement of his sentence.  To do so would elevate form over substance, since Aparicio himself has admitted his guilt at the change of plea and again at sentencing.

Accordingly, the Court concludes that Petitioner's argument that the sentence is unenforceable, because there was no formal adjudication held by the Court lacks merit and is denied.

## V.    Conclusion

For the reasons stated herein, Petitioner's motion to vacate, set aside, or correct an allegedly illegal sentence pursuant to 28 U.S.C. § 2255 is **DENIED**. The clerk is directed to close the civil case.

## CERTIFICATE OF APPEALABILITY AND
## LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHERED ORDERED that Petitioner is not entitled to a certificate of appealability.  A prisoner seeking a motion to vacate has no absolute entitlement to appeal a district court's denial of his motion. 28 U.S.C. § 2253(c)(1).  Rather, a district court must first issue a certificate of appealability ("COA").  Id.  "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  Id. at § 2253(c)(2).  To make such a showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n. 4 (1983)). Petitioner has not made the requisite showing in these circumstances.  Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

**DONE AND ORDERED** at Tampa, Florida, this 28th day of February, 2013.

*Susan C. Bucklew*
SUSAN C. BUCKLEW
United States District Judge

Copies to: All Parties and Counsel